[Crim. No. 2620. In Bank.—December 6, 1923.]

## THE PEOPLE, Respondent, v. FRANK LE ROY, Appellant.

[1] CRIMINAL LAW — BURGLARY — POSSESSION OF STOLEN ARTICLES — VERDICT—EVIDENCE.—In a prosecution for burglary, while the mere possession of stolen property, standing by itself, is insufficient evidence upon which a conviction may be sustained, the presence in defendant's abandoned "hobo" camp of several of the stolen articles, together with the shoes apparently worn by the burglar at the time the offense was committed, and the fact that when a stolen shirt was found in defendant's possession he refused to tell where he got it, furnished sufficient additional evidence against the defendant to justify the jury in reaching the conclusion that defendant was guilty.

[2] ID. — EVIDENCE — POSSESSION OF WATCH—PREJUDICIAL ERROR.—In such prosecution, where, for the purpose of connecting defendant with the occupancy of the hobo camp, it was shown that a watch, which was not one of the articles taken in the commission of the offense with which defendant was charged, was found in the camp and that the defendant had used a name similar to that engraved on the inside case of the watch, the admission, over defendant's objection, of the further testimony that the watch in question was identified by the witness as being her property and that it had previously had her name engraved therein which had been changed to the name used by the defendant, constituted prejudicial error.

1. Possession of recently stolen property as evidence of burglary, notes, 19 Ann. Cas. 1281; 12 L. R. A. (N. S.) 199.

2. Admissibility of evidence that one charged with burglary was in possession of property not identified as part of that stolen, notes, 16 Ann. Cas. 669; 3 A. L. R. 1213.

APPEAL from a judgment of the Superior Court of Ventura County and from an order denying a new trial. Merle J. Rogers, Judge. Reversed.

The facts are stated in the opinion of the court.

Drapeau, Orr & Gardner for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

WILBUR, C. J.—The facts in this action are correctly stated in the opinion written by Mr. Justice Houser, which we adopt, as follows:

"Defendant was convicted of the crime of burglary. He appeals from the judgment and from the order of the court denying his motion for a new trial.

"It is first argued that the evidence is insufficient to sustain the verdict. There was ample evidence to sustain at the least the following ultimate facts: The person who committed the burglary wore a peculiarly shaped pair of shoes, and that such person had a camp in the river-bed. A pair of shoes such as was worn by the burglar, as well as several of the stolen articles, were found in a place where defendant had been 'hobo' camping in the 'jungles of a river bottom.' The tracks of the burglar were followed from the house which was burglarized to a point within fifty feet of defendant's camp. When arrested (which was at a time three months after the date of the burglary) defendant was wearing a shirt which was identified as one which had been stolen at the time the burglary was committed.

"It was not shown that the shoes which were found in the camp were worn by defendant at any time, nor that they were of the size worn by defendant. However, it is admitted that the shoes were of such a size that defendant might have worn them. On the other hand, the defendant in his testimony did give an explanation of his possession of the shirt. Those matters, however, were for the consideration of the jury, going to the point whether or not from all the evidence in the case the jury should believe beyond a reasonable doubt that the defendant committed the crime. Defendant's explanation of his possession of the shirt was un-

doubtedly considerably weakened by an attack upon his credibility as a witness arising particularly out of the fact that theretofore he had been convicted of a felony on two separate occasions. [1] While it is true that the mere possession of stolen property, standing by itself, is insufficient evidence upon which a conviction may be sustained, the presence in defendant's abandoned 'hobo' camp of several of the stolen articles, together with the shoes apparently worn by the burglar at the time the offense was committed, and the fact that when the shirt was found in defendant's possession he refused to tell where he got it, furnished sufficient additional evidence against defendant to justify the jury in reaching the conclusion that defendant was guilty. (*People* v. *Lang*, 142 Cal. 482, 485 [76 Pac. 232].)

"Among the articles found in the defendant's abandoned camp was a watch. This watch was not one of the articles taken in the commission of the offense with which defendant was charged but it was used as a means of connecting defendant with the occupancy of the camp where the other articles were discovered. In this connection a witness, after identifying the watch as being her property, testified as follows: 'Q. And is there anything inside of the case of the watch that enables you to state that it is your watch? A. There was. Q. And what is inside of the case there, Mrs. Proctor? A. When it was taken from it (me) it had "E. Ormsby" engraved on the inside case, which now has been changed. Q. We ask you, Mrs. Proctor, what it has been changed to? A. E. Kemsley. Q. Semsley now, will you say? A. I would say Semsley.'

"Other testimony in the case showed that defendant had called at the postoffice for mail addressed to C. Semsley. Defendant's contention is that error was committed by the court in admitting such evidence for the reason that it insinuated into the minds of the members of the jury the fact that more than one burglary had been committed and the possibility of defendant being guilty thereof. But there was no direct evidence of the commission of any other burglary, or anything to the effect that the watch had been stolen. The evidence, in substance, was that the engraved name of 'Ormsby' thereon had been changed to 'Semsley.' "

[2] The purpose of the evidence in regard to the watch as a means of connecting the defendant with the occupancy

of the camp was fully accomplished by testimony showing that the watch had been found at the camp and that it contained a name similar to that used by the defendant. The fact that the watch was identified by the witness, Mrs. Proctor, as her watch, and that it had previously had her name engraved therein was thus wholly immaterial so far as the avowed purpose for which the evidence was adduced. The court erred in admitting this testimony over the objection of the defendant.

The next question is whether or not the error of the court was so prejudicial to the rights of the defendant as to result in a miscarriage of justice.

The witness stated, "This is my watch." This would indicate that, notwithstanding its presence in the hobo camp with the name of the defendant engraved thereon and her own name scratched out, that she had never parted with title thereto. The witness also stated that the watch had been taken from her, and in view of the fact that she stated that it was her watch, and the fact that it was found with the stolen goods belonging to the complaining witness, the clear inference from all the facts and circumstances was that it had been stolen notwithstanding the fact that the witness did not expressly so state. From the fact that the watch was stolen, the name of the owner removed and that of the defendant put in its place, the inference would be very clear that the defendant was connected with the crime. Indeed, if the witness had testified that the watch had been taken from her without her consent, the evidence to connect the defendant with that crime would be nearly as full and complete as the evidence tending to connect him with the crime of which he is convicted with the single exception of the footprints leading from the camp to the place of the burglary, for in one case we have a stolen watch with his name en-- graved therein, indicating possession, and in the other case we have the actual possession of the stolen shirt.

We cannot escape the conclusion that this evidence was so prejudicial that it probably resulted in the conviction. Under the well-known rule pertaining to criminal cases depending upon circumstantial evidence, it was much easier to account for the possession by the defendant of the stolen shirt three months after it was stolen, upon the hypothesis of his innocence than to account for the possession of a

stolen watch from which the name of the owner had been removed and the name of the thief had been substituted. For instance, the defendant was found guilty of going to and entering into the house of the complaining witness with intent to commit the crime of larceny, and the only evidence tending to show that he went to that house and returned therefrom was the footprints made by shoes found at the camp, which, upon the presumption of innocence which required the jury to accept the view of the circumstances most favorable to the defendant, they might well have assumed were worn by some other member of the group at the camp. If the defendant did not aid or abet in the commission of the crime, but accepted the shirt, knowing it was stolen, his offense would not be burglary. The evidence tending to support the verdict, while sufficient to sustain that verdict, was, nevertheless, meager. The defendant was laboring under the extreme disadvantage of having to admit on cross-examination that he had been twice convicted of felony, and while this evidence was admissible solely for the purpose of discrediting his testimony, it is manifest that the jury was likely to consider it in weighing the incriminating circumstances proved against him.

For the error in admitting this testimony the judgment must be reversed.

In view of our conclusion it is unnecessary to pass on the other matters presented by the defendant.

Judgment reversed.

Myers, J., Seawell, J., Lennon, J., and Kerrigan, J., concurred.

LAWLOR, J., Dissenting.—I dissent.

It is conceded by the main opinion that the evidence is sufficient to sustain the verdict, but before considering the asserted error in the admission of the evidence touching the watch I shall refer to other phases of the proof in order to show that even if such rulings were erroneous, the admission of the evidence cannot be held to call for a reversal.

According to the record appellant asked for mail both for "Frank Monroe" and C. Semsley, and on arraignment he gave the name by which he was prosecuted. "*Recent possession*" of the shirt is established by appellant's own tes-

timony to the effect that in the first part of September (the burglary was committed on August 24th) it was left where he was camped near the Santa Clara bridge, between El Rio and Montalvo, by two men, Art Croten and his father, who drove in with a Chevrolet express car. Art Croten was wearing the shirt at the time. The two men camped with appellant about three days. When departing they left the shirt and some other articles and he "washed up the shirt and have wore it ever since." Appellant admitted he was living in that camp between the 1st and 10th of September; that he bought the car from the Crotens, paid them $190 in currency, and "they went away with the car and beat me out of the car"; took his roll of blankets with them, and that they were more valuable than the roll they brought to the camp and left there. Jacob Cohn, who kept a grocery-store at El Rio, testified that appellant bought supplies from him several times in the early part of spring and in October and November. In October, accompanied by appellant, he delivered goods to a "hobo camp" in the river bottom about a mile or a mile and a half north of the bridge, on which occasion he saw two or three other men at the camp. John Donlon, Jr., testified that in the month of April he saw appellant at a camp a mile and a half "up the river in the direction of Santa Paula," above the Montalvo bridge, and that appellant told him he was camped there. This camp was southwest of the Linehan place. He was attracted to the presence of appellant by noise in the brush; that this was the only camp he knew of on the river bottom, and that he had met appellant on a trail in the river-bed prior to the meeting at the camp, and two or three weeks later he met him on the road coming from Oxnard. Henry C. Sullivan, a deputy sheriff, testified that the camp where the things were found was "about a mile north, or a little northeast of the Montalvo River bridge, the east end of the Montalvo River bridge"; that Donlon directed him to the camp and was present at the time the things were found. The testimony of Cohn, Donlon, and Sullivan approximates the distance of the camp from the bridge and agrees in the description and location—referring to the camp where the shoes, watch, and jewelry were found, and neither Cohn nor Sullivan refer to any other camp on the river bottom. Appellant did not testify as to the location of the camp visited

by the Crotens, but Sullivan quoted him as stating in the district attorney's office that he lived in the river bottom, west of the bridge. He testified his camp was between El Rio and Montalvo, near the bridge—not giving the distance from the camp to the bridge. The evidence is, then, that Cohn accompanied appellant to the camp; that Donlon saw appellant at the only camp he knew of in the river bottom; that appellant told him he was camped there; that Donlon directed Sullivan to that camp, and that it was at that camp the things were produced in his presence. None of this testimony was contradicted, nor is it denied that the shoes were worn by appellant; that the shoes, the jewelry and watch were located in the camp, nor that he brought them there. Appellant's counsel argue that if he was connected with the camp the officers would have contrived to find him there. There is no claim by the defense and no one testified that there was a camp on the river bottom other than the one where the missing property was located. There is direct evidence that appellant was seen at the camp before the burglary; that he said he camped there; and the only camp shown to exist was that camp, and it was there the things were found. It can hardly be true, in the light of the record, that the shoes were the only evidence that appellant went to and returned from the Linehan house, for the possession of the stolen property is evidence of burglary, from which the jury could have inferred that appellant went to the house during the brief absence of the occupants.

The adverse verdict disposes of the statement in the majority opinion that upon the presumption of innocence the jury may well have assumed the shoes ''were worn by some other member of the group at the camp.'' And especially as appellant is the only person the evidence traces to the camp where the shoes were discovered. Moreover, there is no evidence that there was any other occupant of the camp before the burglary.

Appellant's direct examination was limited to the possession of the shirt. There is no counter-evidence of any kind that he did not commit the burglary. He admitted two previous convictions of felony, but could not recollect the character of one of them. The evidence given by appellant, including the fantastic story of this admitted hobo buying an automobile from his supposed visitors and paying $190

in currency for it, the car, like his visitors, vanishing into thin air, would alone destroy the defense. The court instructed the jury as to the limited purpose for which the evidence of previous convictions might be considered and that such evidence would not warrant a verdict of guilty of the crime charged upon any less degree of proof than that required in any other case.

Upon this evidentiary showing there can be no warrant for placing the finding of miscarriage of justice upon the character or quantity of the proof.

The judgment of conviction is to be reversed because the owner of the watch was allowed to testify "this is my watch"; that it had been taken and that her name on the watch had been obliterated and "Semsley" substituted. One tendency of this testimony would be to further identify the timepiece.

If nothing more were shown than that the watch was found in the camp and that it bore a name appellant was known to have used, the jury would probably draw the inference that he was the owner—a false hypothesis which the prosecution should not allow the jury to assume even if it more certainly tended to connect appellant with the camp. It follows that the facts as to the watch should have been proved completely, even if the evidence suggested an unexplained possession in appellant. It was open to the defense to request an instruction limiting the purpose for which the jury might consider the evidence as to the watch, and none was proposed. It is the duty of the prosecution to rebut every presumption which under any theory of the case might favor innocence and to anticipate matters of defense sounding in the case of the prosecution when it is believed the accused is guilty. In view of the evidence and the entire record it should not be held that appellant was prejudiced in his rights by the admission of the evidence in question, even if it be assumed it was not proper to admit it in order to further identify the watch. Under no circumstances can it be said the admission of the evidence worked a miscarriage of justice.

The order denying the motion for a new trial should be affirmed.