[Crim. No. 3320. Second Appellate District, Division Two.—May 20, 1940.]

THE PEOPLE, Respondent, v. RUDOLPH ENRIQUEZ, Appellant.

Stanley Visel for Appellant.

Earl Warren, Attorney-General, and L. G. Campbell, Deputy Attorney-General, for Respondent.

WOOD, J.—An information was filed against appellant Rudolph Enriquez and Julius Roberts and William Marsh, charging that on August 17, 1939, they committed the crime of robbery by forcibly taking the sum of $16 and a quantity of cigarets and liquor from the possession of J. R. Picklum.

In a second count in the information it is charged that the same defendants are guilty of burglary in that on the same date they entered the establishment of J. R. Picklum at 4801 South Main Street in the city of Los Angeles with intent to commit theft. The prosecution relied upon the same set of facts and circumstances to sustain both charges. A jury found appellant guilty of the crime of robbery and not guilty of the crime of burglary. He now appeals from the judgment of conviction and from the order denying his motion for a new trial, basing his appeal upon the contention that the evidence is insufficient to justify his conviction and upon errors of the trial court in instructing the jury.

The witness Picklum testified that "about between 12:15 and 12:30 o'clock on the morning of August 17", he was at his cafe at 4801 South Main Street when a man whom he identified as defendant Marsh entered and, drawing a gun from his pocket, compelled the witness to "get in the back room"; that he heard somebody else coming in and looked and saw two men who were strangers to him. These two men took part in the robbery. The witness identified defendant Roberts as one of the two men but failed to identify appellant. The record discloses the following testimony by the witness on this point: "Yes, I saw them to a certain extent. I took a good look at them to see whether they were people I knew or not. Q. Do you see either of the other two persons that were coming into your place of business? Do you see them in the courtroom? A. The second man from the end I recognize. Q. That is referring to the man to the right of Mr. Marsh? A. Yes. Q. And to the right of Mr. Enriquez? A. Yes. Mr. Leavy: May the record show he is referring to the defendant Roberts? The Court: It may so show. Mr. Leavy: May I have the defendant Enriquez stand up? The Court: You may stand up. Q. Mr. Leavy: Directing your attention to Mr. Enriquez, standing at this time, are you able to describe as to build, the other man who was coming in with the man you have already identified as Mr. Roberts? Are you able to describe the build with reference to the defendant Enriquez and the man whom you saw coming in with Roberts on the occasion you have told us about? A. He was the general build of Enriquez." Referring to the identification of defendant Roberts, the witness stated that he based the identity "on the dress and manner of walk and the stooped shoulders and he had his

head rather down . . . I noticed that his nose was quite prominent . . . he gave an impression of having a little wider nose than ordinary". Concerning appellant the witness further testified: "Q. You don't intend to say, do you, by your testimony that Enriquez here, the man sitting at the end of the table, is one of those two men that came in? A. I couldn't identify him myself."

At 2:25 A. M. on August 17th police officers went to a lodging house at 836 Crocker Street, where appellant occupied room 315. In this room the officers found bottles of liquor and cartons of cigarettes which had been stolen earlier from Picklum's cafe. Part of the goods was in a dresser drawer and part in a suitcase. Appellant returned to his room at about 8 o'clock A. M., and upon being questioned by the officers, stated that he did not know how the goods got into his room, that somebody else must have put them there.

Appellant was sworn as a witness and testified that he had occupied room 315 for about two weeks before the robbery; that the suitcase was the property of one Frank Herman, who had loaned it to appellant; that he had permitted Herman, who had a girl friend, to use his room on several occasions and that on three occasions when he had returned to his room he had found Herman there; that a man named Frank Salas who formerly occupied room 314, across the hall, had had a key to room 315; that on the evening of August 16, 1939, upon his return to his room he had found a note reading "see me tonight, important, Frank H". Appellant "figured" the note was from Herman and went to cafes in the vicinity of Fifth and Main Streets in search of him. He did not find Herman during the evening, and at about 12 o'clock went to one of the all-night picture shows on Main Street near Fifth Street where he remained until about 5 o'clock A. M. From the picture show he went to a Mexican broadcast at a theater at Eighth and Main Streets, where he remained until he returned to his room. Appellant stated that he was not acquainted with defendant Roberts but that he had known defendant Marsh and had been at his place on two occasions.

Audrey Thompson appeared as an alibi witness for appellant. She testified that she attended the picture show, concerning which appellant had testified, on the night in question; that she arrived there a little before midnight and

remained until the end of the show at about 5 o'clock A. M. She saw appellant, whom she had previously known, at the show and noticed that appellant was accompanied by one or two men but defendants Marsh and Roberts were not with him. At that time appellant asked the witness if she "would like to stick with him", but she declined as she was with someone else. The witness testified that appellant took his seat a short distance from her. The witness further testified: "At different times I glanced over there and noticed they were still there, but my attention was directed mostly to the screen. I couldn't say he was there the full time. Q. After you were seated in the theater and you saw Enriquez seated in the theater, starting around quarter of twelve, did you notice him at any time between that time and say a quarter past twelve? A. I think so, yes. Q. Was he still in the theater during some portion of that period of time? A. Yes. Q. Do you remember having glanced over that way and having seen him there? A. Yes. . . . I saw him occasionally in the show up until I should say about five o'clock." The witness also testified that the wife of defendant Marsh had told her that a day or two after the robbery Marsh and appellant were both in jail and that appellant had told her (Mrs. Marsh) that the witness could recall seeing him in the theater on the night in question.

Appellant now complains of the refusal of the court to give to the jury the following instruction: "The possession of stolen property is not of itself sufficient evidence of the guilt of the party in whose possession it is found and if you find no evidence of the guilt of the defendant other than the possession of the stolen property, it is your duty to render a verdict of not guilty." This instruction correctly sets forth a principle of law which has been approved in many decisions and the court committed prejudicial error in refusing to give it to the jury. (4 Cal. Jur. 741 and cases there cited.) It was the duty of the court to instruct the jury as to the principles of law pertaining to the facts and circumstances presented in the evidence. (*People* v. *Chesney*, 72 Cal. App. 570 [237 Pac. 793].) Although the court may in a proper case decide whether there is any competent evidence in addition to proof of possession of stolen property, the question ordinarily is for the determination of the jury whose province it is to weigh the evidence and draw reasonable inferences therefrom.

■ Respondent argues that the identification of appellant by the witness Picklum was sufficient to supply the additional evidence required by law. The evidence on this point, however, is at the most very slight; indeed it may be well argued that the identification evidence is more favorable to appellant than respondent. Mr. Picklum not only failed to identify appellant notwithstanding he took a ''good look'' at him at the time of the robbery but he did identify the other two participants in the robbery, particularly pointing out the features of defendant Roberts which enabled the witness to recognize him. The very fact that the witness could identify only two of the three robbers in this manner forms ground for the contention that appellant was not one of the three. The most that can be gleaned from his testimony by the prosecution is that the witness stated that appellant, who was singled out and ordered to stand in the court room, was of ''the general build'' of the robber. Unquestionably there are many thousands of men in the city of Los Angeles of the same ''general build''.

■ Respondent points to the alibi testimony of the witness Audrey Thompson and argues that here also can be found evidence in addition to that concerning the possession of the stolen property. We find nothing in the record bearing out this contention. The fact that Mrs. Marsh had been requested by appellant to seek the witness for the purpose of verifying his statement that he was in the theater presents but a natural situation. Nor do we find anything incriminatory in the circumstance that appellant had been acquainted with defendant Marsh. The fact that appellant could not inform the officers concerning the person who had left the stolen property in his room cannot be relied upon by the prosecution to supply testimony necessary to sustain the conviction. As pointed out in *People* v. *Hurley,* 60 Cal. 74, 78 [44 Am. Rep. 55] : ''if he did not know that they were there, he could not explain how they came to be there.'' The prosecution did not prove that any of the statements made by appellant concerning the presence of the stolen property in his room were in fact false. Conceding, without deciding, that the record shows sufficient evidence to sustain a verdict of guilty, the appellant undoubtedly had the right to have the issues presented to the jury under proper instructions informing them of the principles of law applicable.

■ In this regard it should be borne in mind that evidence

that appellant received the goods obtained in the robbery with knowledge of how they had been obtained would not, standing alone, be sufficient to justify a conviction of the crime of robbery. (*People* v. *Shephardson,* 48 Cal. 189.) Appellant was not here charged with the crime of receiving stolen property.

The prejudicial effect of the error of the trial court in refusing to give the instruction above quoted was emphasized when the court gave to the jury the following instruction: "Where goods have been feloniously taken by means of a burglary and they are immediately or soon thereafter found in the possession of a person who gives a false account or refuses to give any account of the manner in which he came in their possession, proof of such possession and guilty conduct is presumptive evidence, not only that he stole the goods, but that he made use of means by which access to them was obtained." As above pointed out, it was not shown that appellant gave a false account of the presence of the stolen goods, and he could not be expected to explain what he did not know. The court premised its instruction upon the supposition that defendant had given a false account or had refused to give any account of the manner in which he came into possession of the property and added that "proof of such possession and guilty conduct is presumptive evidence" of guilt. The court should not have told the jury that such facts were presumptive evidence of the guilt of appellant.

Respondent refers to *People* v. *Lang,* 142 Cal. 482 [76 Pac. 232], wherein certain language appears which apparently would justify the instruction but in that case the court did not approve of an instruction to the jury that proof of possession of stolen property under the circumstances indicated is presumptive evidence of guilt. The language in the opinion in the Lang case which is relied upon by respondent was not necessary to the decision. The author of the opinion cites *People* v. *Smith,* 86 Cal. 238 [24 Pac. 988], as authority, but the ruling in the Smith case was merely that the evidence there under review was "sufficient to warrant the jury in their verdict". No presumption of guilt arises from possession of stolen property or the failure of defendant to account for his possession of it, but the question of defendant's guilt must be left to the determination of the jury from all the facts and circumstances shown in evidence. The fact that appellant was acquitted of the

crime of burglary does not cure the vice of the instruction, which naturally tended to confuse the jury in considering the two charges of robbery and burglary growing out of the same set of facts.

The judgment and the order denying the motion for a new trial are reversed and a new trial is ordered.

Moore, P. J., and McComb, J., concurred.