[Crim. No. 3699.   Second Dist., Div. Three.   July 30, 1943.]

THE PEOPLE, Respondent, v. CHARLES CORRAL, Appellant.

Redmond & Redmond for Appellant.

Robert W. Kenny, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

SHAW, J. pro tem.—After a trial by jury defendant was convicted of burglary in the second degree, and appeals from the judgment. The charge against him was that he entered the store and building of the Fifth Street Store, a corporation, with intent to commit theft.

Briefly stated, the evidence for the people shows the following facts. The Fifth Street Store is a large department store in the city of Los Angeles. Mrs. Myrtle Norton, a store detective in the employ of that store, saw defendant, accompanied by another man, walk into its men's suit department,

take a suit down and hand it to the other man, who tried to put it under his coat. The defendant then took this suit from the other man, folded it over the hanger and put it down inside his trousers. The two men left the store, followed by Mrs. Norton, and went to a parking lot, where they entered an automobile and sat in the back seat. Mrs. Norton looked for an officer but could find none. Defendant and the other man entered another store near by, where Mrs. Norton picked up a store detective of this store, Mrs. Wills, and the two of them watched and followed defendant and the other man, who looked at some women's coats, but took nothing. The two men returned to the Fifth Street Store and went again to the men's suit department. There defendant took another suit off the rack, wrapped it around a hanger and put it inside his trousers. The defendant did not, on either of these visits to the Fifth Street Store, speak to any salesperson and there was none near where he took the suits. After taking the second suit the two men again left the store and went to the same parking lot as before. On the way Mrs. Norton met a special police officer named Chatterton, who went with her. At the parking lot Chatterton arrested defendant and while he was doing so the other man escaped. The first suit taken by defendant was found concealed in a compartment back of the back seat of the automobile to which he went the first time, and the second suit was found in defendant's trousers. When this suit was found, defendant said "I give up." Mrs. Norton testified to all these facts, and she was corroborated by Mrs. Wills as to all the happenings after Mrs. Wills joined Mrs. Norton. Chatterton also testified to the arrest of defendant and the finding of the suits, but said that both of them were found in defendant's clothes. Of this location he seemed not to be certain, however. Mr. Simpson, a superintendent of store detectives, who went to the parking lot after defendant's arrest, testified that he saw one of the suits in a special compartment built in back of the back seat of defendant's car.

The defendant took the stand and denied taking either of the suits and laid the blame therefor on the man who got away. He also made an experiment intended to show the impossibility of putting a suit inside of his trousers. However, a police officer testified that when defendant was arrested he wore an unusually long belt and that by extending this a suit could be put inside the trousers. Defendant's credibility

may have been considerably impaired with the jury by the fact that on direct examination he testified that the other man, whose name he did not know, picked defendant up and gave him a ride down town, while on cross-examination defendant admitted that the car was his and said that he picked up the other man and gave him a ride.

Appellant's brief appears to raise the following points: (1) that the place entered by defendant does not come within the list of places, entry in which is necessary under section 459 of the Penal Code to constitute burglary; that the evidence is not sufficient to show (2) a wrongful entry, or (3) the intent required by that section; (4) that the evidence is inherently improbable; (5) that the owner of the property stolen did not testify and there is no evidence of ownership thereof; that the court erred in its instructions (6) by failing to give the jury a definition of theft, and (7) by giving an instruction regarding possession of stolen property.

Section 459 of the Penal Code provides that ''Every person who enters any house, room, . . . shop, . . . store . . . or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary.'' ▮ The name of the crime formerly known as ''larceny'' having been changed to ''theft'' (Pen. Code, sec. 484, as amended in 1927), section 459 is to be read as if it used the word ''theft'' instead of ''larceny.'' (Pen. Code, sec. 490a; *People* v. *Bayne,* (1934) 136 Cal.App. 341, 348 [28 P.2d 1068].) ▮ Defendant's contention under his first point seems to be that when section 459 was adopted in 1872, and even when it was last amended in 1913, stores were not of the large size and multifarious character now attained by modern department stores, especially that where defendant was charged with committing his crime, and therefore such modern department stores are not to be deemed within the meaning of the word ''store'' as used in that section. There is no merit in this contention. The character of a place as a store does not depend upon its size or the number of departments contained in it; but if it did, section 459 contains also the word ''building,'' and in view of its context no legislative intent can be discerned to limit this word to anything less than its broadest meaning (*People* v. *Burley,* (1938) 26 Cal.App.2d 213 [79 P.2d 148]), which undoubtedly comprehends the building housing the store in question.

Defendant's second and third points may be discussed together. It is true, as he contends, that the public in general are invited to enter such places of business as that here involved; but this invitation is not extended to those who enter for the purpose of theft. (*People* v. *Barry,* (1892) 94 Cal. 481, 483 [29 P. 1026]; *People* v. *Brittain,* (1904) 142 Cal. 8, 10 [75 P. 314, 100 Am.St.Rep. 95].) Moreover, even an entry with the owner's consent into one of the places mentioned in section 459 would nevertheless constitute a burglary if made with the intent specified in that section. (*People* v. *Descheneau,* (1921) 51 Cal.App. 437 [197 P. 126]; *People* v. *Barry, supra,* at p. 482; *People* v. *Brittain, supra,* at p. 9.)

Such an intent must be shown to prove a burglary, and here the information narrows the necessary proof to that of an intent to commit theft. Perhaps the mere fact that defendant committed a theft while inside the store is not sufficient to show his intent when he entered (see *People* v. *Barry, supra,* at p. 484), but here there are other facts. The defendant had on, when he made his entry, a belt which could be so adjusted as to make possible the concealment of a suit within his trousers; and not only did he take and conceal by this means one suit from the store, but after disposing of it he returned there and took another suit and concealed it in the same manner. These and the other circumstances shown are ample to support a finding that he entered the store with intent to commit theft.

Defendant's fourth point, that the evidence against him is improbable, may be dismissed with the statement that to one reading it the impression is quite to the contrary. The question of its credibility was one for the jury.

It was not necessary for any representative of the store to appear and testify to its ownership of the suits. Except for the bearing of that fact on the question of defendant's intent in entering the store, it was not material to the charge of burglary, for burglary would be complete without an actual theft (4 Cal.Jur. 720); and it was sufficiently proved by the showing that when defendant took the suits they were in possession of the store on hangers which were on the racks in its salesroom. (*People* v. *Hayes,* (1925) 72 Cal.App. 292, 299 [237 P. 390]; *People* v. *Brannon,* (1939) 30 Cal.App.2d 445 [86 P.2d 842].)

The trial court gave the jury a definition of burglary

in the words we have above quoted from section 459 of the Penal Code, except that "theft" was substituted for "larceny." Defendant now complains that no further instruction was given defining theft, pointing out that section 484 of the Penal Code defines theft so as to include several different acts, and arguing that for lack of a definition of theft the jury were left in ignorance of the precise nature of the intent on defendant's part which must be shown to support a conviction. It may well be that in some cases of burglary such an argument would be well taken, but this is not one of them. Only one sort of theft—larceny—was indicated by the evidence, and the showing of defendant's intent to commit that crime is so clear that we do not see how the jury could have had any doubt about it, or misunderstood the instruction. (See *People* v. *Tibbitts*, (1939) 35 Cal.App.2d 669, 673 [96 P.2d 812].) Even if such an instruction should properly have been given here, its absence has not resulted in a miscarriage of justice.

■ The trial court also gave the following instruction, to which objection is made: "Where goods have been feloniously taken by means of a burglary and they are immediately or soon thereafter found in the possession of a person who gives a false account or refuses to give any account of the manner in which he came in their possession, proof of such possession and guilty conduct is evidence, not only that he stole the goods, but that he made use of means by which access to them was obtained."

ᐧ This instruction is correct. It is copied from a statement made in *People* v. *Lang*, (1904) 142 Cal. 482, 485 [76 P. 232], except that the trial court, before giving it, eliminated the word "presumptive," which appears in *People* v. *Lang* before the word "evidence." This statement from *People* v. *Lang* has been quoted and approved in *People* v. *Morrell*, (1915) 28 Cal.App. 729, 733 [153 P. 977]; *People* v. *Farrell*, (1924) 67 Cal.App. 128, 133 [227 P. 210]; *People* v. *Murphy*, (1928) 91 Cal.App. 53, 54 [266 P. 374]; *People* v. *McClain*, (1931) 115 Cal.App. 512, 514 [1 P.2d 1023]; *People* v. *Robertson*, (1931) 117 Cal.App. 413, 415 [3 P.2d 946]; *People* v. *Darnel*, (1938) 28 Cal.App.2d 122, 126 [82 P.2d 209]. *People* v. *Lang, supra*, was cited and followed on this point, though not quoted, in *People* v. *Le Roy*, (1923) 192 Cal. 498, 500 [221 P. 353]. Substantially the same rule as that stated in the

foregoing instruction was declared in *People* v. *Russell,* (1932) 120 Cal.App. 622, 625 [8 P.2d 209]; *People* v. *Reynolds,* (1933) 130 Cal.App. 754, 757 [20 P.2d 952]; *People* v. *Taylor,* (1935) 4 Cal.App.2d 214, 217 [40 P.2d 870]; and *People* v. *Russell,* (1939) 34 Cal.App.2d 665, 669 [94 P.2d 400]. The court, in giving the instruction, omitted the word "presumptive," on which criticism of an instruction containing it, and of *People* v. *Lang, supra,* was based in *People* v. *Enriquez,* (1940) 39 Cal.App.2d 168, 174 [102 P.2d 770]. The instruction was applicable to the evidence, for not only did the defendant, when arrested and found in possession of the stolen suits at the parking lot, fail to give any explanation of that possession, but he spoke the words "I give up," which are indicative of guilt.

The judgment is affirmed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.