Filed 7/22/14  P. v. Baldwin CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LLOYD BALDWIN,<br><br>    Defendant and Appellant. | B249277<br><br>(Los Angeles County<br>Super. Ct. Nos. BA384561 and<br>BA405837) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Carol H. Rehm, Jr., Judge.  Affirmed as modified.

Daniel R. McCarthy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Connie H. Kan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendant Lloyd Baldwin appeals from the judgment of conviction entered after a jury found him guilty of second degree commercial burglary (Pen. Code, § 459[1]).  The trial court in a bifurcated trial found true the allegations that Baldwin had suffered eight prior prison terms pursuant to section 667.5, subdivision (b).  The trial court also found that Baldwin violated probation on a prior conviction.

On May 22, 2013 the trial court sentenced Baldwin to state prison for a term of five years, consisting of the middle term of two years plus three one-year prior prison term enhancements (§ 667.5, subd. (b)).  The trial court awarded him a total of 317 days of custody credit.  The trial court imposed a restitution fine of $200 pursuant to section 1202.4, a criminal conviction assessment fee of $30 pursuant to Government Code section 70373, subdivision (a), a court security fee of $40 pursuant to section 1465.8, subdivision (a)(1), a crime prevention fine of $10 plus penalty assessments pursuant to section 1202.5, subdivision (a), and a DNA assessment of $20 pursuant to Government Code section 76104.7.  The court also imposed and suspended a parole revocation restitution fine of $200 pursuant to section 1202.45.

For the probation violation the court imposed the five-year state prison sentence that had been suspended pursuant to Baldwin's plea agreement in connection with the prior conviction.  The court ordered that Baldwin serve the sentences concurrently.  The court also imposed a probation revocation restitution fine of $200 for Baldwin's violation of his probation, pursuant to section 1202.44.

Baldwin argues that there is no substantial evidence to support his conviction for burglary because he lacked the specific intent to commit theft when he entered the building.  We conclude that there was substantial evidence from which a jury could find beyond a reasonable doubt that Baldwin had the requisite intent to commit burglary.

---

[1]      Undesignated statutory references are to the Penal Code.

The People argue that the clerk's minute order and the abstract of judgment should be amended to include $31 in mandatory penalties and surcharges associated with the $10 crime prevention fine the trial court imposed pursuant to section 1202.5, subdivision (a). We do not reach this issue because the trial court erred in imposing the $10 fine without determining Baldwin's ability to pay, as required by section 1202.5, subdivision (a). Given the disparity between the amount of the fine including penalty assessments and the cost of a remand to determine Baldwin's ability to pay, we strike the fine imposed pursuant to section 1202.5, subdivision (a).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Prior Incidents*

The Standard Hotel has a policy against allowing transients to collect trash and recyclables on its property. Despite this policy, transients are able to gain access to the hotel's garbage and recycling containers where hotel employees bring empty bottles from the bar. Baldwin lives off of money he collects from recycling, panhandling, and Social Security Insurance. He regularly asks for money outside the Standard Hotel, which he referred to as a "watering hole."

Standard Hotel employees caught Baldwin taking bottles of alcohol from the lobby bar on at least two occasions prior to December 15, 2012. The first incident occurred on May, 16, 2011. A security guard discovered Baldwin crouched behind the closed-off lobby bar placing a wine bottle into a plastic bag. Baldwin did not have permission to take the bottle, and the lobby bar was closed, "locked down" with a metal chain. As a result of this incident, Baldwin pleaded guilty to petty theft with prior convictions for theft pursuant to sections 666 and 667.5, subdivision (b). The trial court in that case sentenced Baldwin to five years in state prison, suspended execution of the sentence, and placed him on probation for a period of three years, subject to certain terms and conditions. One of those terms and conditions was that Baldwin "stay away at least 100 yards . . . from the Standard Hotel . . . ."

3

The second incident occurred on August 15, 2012. Ricardo Choc, a Standard Hotel valet, saw Baldwin walking away from the lobby bar, which was closed that evening, and towards the exit of the hotel. Choc stopped Baldwin and found in Baldwin's possession two bottles of alcohol. Choc told Baldwin that he was not allowed to take bottles from the bar and told him not to come back to the hotel. The hotel did not report the incident to the police. At some point after this incident, the hotel's head of security saw Baldwin panhandling outside the hotel and told him that if he returned to the hotel he would be arrested.

B.     *The December 15, 2012 Incident*

On December 15, 2012, at 4:30 a.m., Baldwin entered the Standard Hotel through the side entrance, walked directly across the lobby, and jumped behind the lobby bar, all in a matter of four to five seconds. The bar had not been open that night and was locked with the metal chain. Baldwin claims that he was there only to retrieve recyclables from the lobby bar and that he had permission from the hotel maintenance staff to do so. According to Baldwin, the maintenance staff told him he could collect recyclables as long as he could "circumvent the security." Even though Baldwin had been warned on at least three prior occasions not to enter the hotel and was subject to a stay-away order, Baldwin "chose to go with what the maintenance people told [him] because it was more beneficial" to him.

Choc again found Baldwin crouched behind the closed-off lobby bar with a "full bottle" of alcohol in one hand and three "full bottles" of alcohol next to his shoulder bag on the bar. Choc took the bottle from Baldwin and told him to wait until hotel security arrived. He said to Baldwin, "This is not the first time that I'm catching you, and you know that." Baldwin responded, "I know, man, I know." Baldwin ultimately escaped with his shoulder bag and without any bottles of alcohol.

Baldwin was also caught on tape. The hotel's head of security described the video surveillance footage from the December 15, 2012 incident as "the same footage" as the

4

video surveillance footage from the August 15, 2012 incident, meaning that Baldwin's actions on both nights were almost identical.

## DISCUSSION

A.     *Standard of Review*

In determining whether the verdict is supported by substantial evidence, "'"'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]"' [Citation.]" (*People v. Jones* (2013) 57 Cal.4th 899, 960; accord, *People v. Manibusan* (2013) 58 Cal.4th 40, 87; *People v. Abilez* (2007) 41 Cal.4th 472, 504.) "'If the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.' [Citations.]" (*People v. Jones*, *supra*, at p. 963.) "'"'[I]t is the jury, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt.'"'" (*Id*. at p. 961.) "'Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion [that] circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [Citation.]' [Citation.]" (*People v. Manibusan*, *supra*, 58 Cal.4th at p. 87; see *People v. Jones*, *supra*, at p. 961; *People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

B.     *There Is Substantial Evidence that Baldwin Intended To Commit a Theft When He Entered the Hotel*

Baldwin does not dispute that he entered the Standard Hotel and attempted to carry out bottles of alcohol. He challenges only the jury's finding that he had the specific intent to commit a theft upon entering the building. We conclude that substantial

5

evidence supported the jury's finding that Baldwin had the specific intent to commit a theft when he entered the Standard Hotel.

A person is guilty of burglary when he or she enters a building or room with the intent to commit a theft. (§ 459; *People v. Tafoya* (2007) 42 Cal.4th 147, 170.) Burglary is a specific intent crime, such that conviction requires proof beyond a reasonable doubt that the defendant acted with the specific intent to commit a theft. (*People v. Ramirez* (2006) 39 Cal.4th 398, 463; *People v. Waidla* (2000) 22 Cal.4th 690, 734.) A person is guilty of theft when he or she takes the personal property of another without the owner's consent with the intent to deprive the owner of it permanently. (§ 484; *People v. Bacon* (2010) 50 Cal.4th 1082, 1117.) Even if a person does not commit a theft, he or she may still be liable for burglary if upon entry he or she has the specific intent to commit a theft. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042; see *People v. Washington* (1996) 50 Cal.App.4th 568, 577 ["[a]lthough in many cases the goal of a burglary is theft, burglary occurs regardless of whether a theft is accomplished or even attempted"].)

Here, there was substantial evidence to support the jury's finding that Baldwin intended to commit a theft when he entered the Standard Hotel. Baldwin admittedly knew he did not have permission to enter or take anything from the hotel because he had been ordered by a court and admonished by several hotel employees not to do so. He nevertheless violated the court order and ignored the warnings. Moreover, Baldwin entered at 4:30 a.m., a time when, as he knew from prior experience, it was likely that few employees were working, and brought with him a bag that could be used, and in fact was used on prior occasions, to attempt to carry out bottles of alcohol. In addition, Baldwin jumped over and crouched behind the bar, which was closed and locked with a metal chain, which are generally not actions a person takes if he or she had permission to enter a building and take property. Therefore, based on the evidence, the jury reasonably could have concluded that Baldwin had the specific intent to commit a theft when he entered the hotel.

Citing *People v. Corral* (1943) 60 Cal.App.2d 66, Baldwin argues that when a defendant is convicted "of burglary of a location open to the public, there is usually

6

significant independent evidence of preplanning on the part of the defendant." Neither *Corral* nor any other case cited by Baldwin, however, requires evidence of significant planning in order to convict a defendant of burglarizing a location or business open to the public. Burglary requires intent to commit a theft at the time of entry, not planning to commit a theft at some point prior to the time of entry.

Moreover *Corral* supports the conclusion that there was substantial evidence to support the verdict in this case. In *Corral* the defendant entered and exited a clothing store twice and stole a suit concealed in his pants each time. (*People v. Corral*, *supra*, 60 Cal.App.2d at pp. 68-69.) While the court acknowledged that the public is invited to enter places of business, the court stated that "this invitation is not extended to those who enter for the purpose of theft." (*Id.* at p. 71.) The court found that there was substantial evidence of specific intent to commit a theft upon entering the store based on evidence that the defendant wore large trousers, was found in possession of property belonging to the store, and "fail[ed] to give any explanation of that possession, but he spoke the words 'I give up,' which are indicative of guilt." (*Id.* at pp. 71, 73.) Here, the evidence was that Baldwin entered the hotel at 4:30 a.m. with a bag used to steal things, walked directly to the lobby bar, and, when found in possession of bottles of alcohol, gave no explanation and made statements indicative of guilt ("I know, man, I know"). Substantial evidence supports the burglary conviction here, just as it did in *Corral*.

Even if under *People v. Corral*, *supra*, 60 Cal.App.2d 66 the People were required to present evidence of planning in order to prove Baldwin had the requisite specific intent because the Standard Hotel is a business open to the public, there was such evidence here. Although the hotel is open to the public, the closed and locked lobby bar was not. The fact that Baldwin arrived with a bag for concealing bottles and at a time when few hotel employees would be working, entered though a side door, and ran to a place he knew from prior experience had full bottles of alcohol, was substantial circumstantial evidence of planning.

7

C.    *Additional Penalties and Surcharges*

The People argue that the trial court erred by failing to impose all seven mandatory penalties and surcharges associated with the $10 crime prevention fine that the trial court imposed pursuant to section 1202.5, subdivision (a).  The People also contend that, although the trial court imposed one such penalty, the DNA assessment, it did so incorrectly.  Specifically, the People argue that the minute order and the abstract of judgment should be amended to include, in addition to the fine imposed pursuant to section 1202.5, subdivision (a), the following: (1) a state penalty of $10 (§ 1464, subd. (a)(1)), (2) a state surcharge of $2 (20 percent of the $10 crime prevention fee pursuant to section 1465.7, subd. (a)), (3) a state court construction penalty of $5 (Gov. Code, § 70372, subd. (a)(1)), (4) a county penalty fee of $7 (Gov. Code, § 76000, subd. (a)(1)), (5) a penalty of $1 for implementing the DNA Fingerprint, Unsolved Crime and Innocence Protection Act (Gov. Code, § 76104.6, subd. (a)(1)), (6) a DNA penalty of $4 (Gov. Code, § 76104.7, subd. (a)), and (7) an emergency medical services penalty of $2 (Gov. Code, § 76000.5, subd. (a)(1)).  We conclude that, although the trial court erred by failing to impose these mandatory penalty assessments, the trial court also erred by not determining whether Baldwin had the ability to pay the underlying fine, as required by section 1202.5, subdivision (a).[2]

---

[2]    The People may not appeal in a criminal case except under the limited circumstances provided by section 1238.  (§ 1238; *People v. Chacon* (2007) 40 Cal.4th 558, 564.)  On a defendant's appeal, section 1252 provides that an appellate court may, "in addition to the issues raised by the defendant, consider and pass upon all rulings of the trial court adverse to the State which it may be requested to pass upon by the Attorney General."  (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1076; *People v. Braeseke* (1979) 25 Cal.3d 691, 701.)  In addition, although the failure to raise an issue in the trial court generally waives the ability to raise it on appeal, """"unauthorized sentences""" "are reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court.' [Citation.]"  (*People v. Smith* (2001) 24 Cal.4th 849, 852.)  Therefore, "'the People may challenge an "unauthorized sentence" even on a defendant's appeal.' [Citation.]"  (*People v. Smithson* (2000) 79 Cal.App.4th 480, 503.)

8

The People and Baldwin both cite *People v. Castellanos* (2009) 175 Cal.App.4th 1524, and the case supports both sides' arguments. In *Castellanos*, the court found that the fine pursuant to section 1202.5, subdivision (a), is subject to seven additional mandatory penalties and surcharges and that failure to impose them constitutes an unauthorized sentence that the court may correct for the first time on appeal. (*People v. Castellanos*, *supra*, at pp. 1530-1532.) In order to impose a fine pursuant to section 1202.5, subdivision (a), however, the trial court must consider "the accused's ability to pay; 'the amount of any other fine'; and the amount of any restitution ordered paid to victims." (*People v. Castellanos*, *supra*, at p. 1531.)

Here, the trial court erred in failing to inquire into Brown's ability to pay the $10 fine pursuant to section 1202.5, subdivision (a). In *People v. Castellanos*, *supra*, 175 Cal.App.4th at p. 1533 the Court of Appeal remanded the matter for the trial court to determine the defendant's ability to pay. The amount at issue in this case, however, is $31. Possible imposition of a fine in this amount is not a sufficient justification for the expenditure of public funds that would occur if we were to remand the matter to the trial court to determine Baldwin's ability to pay. In the interests of judicial economy and conservation of the State's resources, we strike the $10 fine imposed pursuant to section 1202.5, subdivision (a).

## DISPOSITION

The judgment is modified to strike the crime prevention fine of $10 imposed pursuant to section 1202.5, subdivision (a), and otherwise is affirmed.


SEGAL, J.*


We concur:


PERLUSS, P. J.


ZELON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.