Filed 10/16/15  P. v. Hamilton CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B260084 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA419120) |
| v. | |
| MANDALE HAMILTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed.

A. William Bartz, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury found defendant and appellant Mandale Hamilton guilty of assault causing great bodily injury and of second degree burglary. As to the burglary, the jury found true a gang allegation. Hamilton contends on appeal that there was insufficient evidence, first, to show he entered the building with an intent to commit a theft or a felony and, second, to support the true finding on the gang allegation. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual background.

#### A. *November 21, 2013: Hamilton steals a bag of chips*.

Kenneth Cho owns Marvin's Liquor near the intersection of Jefferson and Denker in Los Angeles. Gaspar Martinez was the store's cashier. About one week before November 20, 2013, Cho told Hamilton not to come to the store "[b]ecause he's trying to keep shoplifting." Despite being told he wasn't welcome at the store, Hamilton returned on November 20 and stole a soda.

The next day, November 21, 2013, Hamilton came into the store and took a bag of Doritos. When Martinez asked Hamilton to pay for the chips, Hamilton angrily refused. Hamilton made a gesture: he put his hands up at chest level with both thumbs up. This incident was captured by video surveillance, which was played for the jury.

Martinez has known Hamilton "since he was a kid." Hamilton never said he was a gang member.

#### B. *November 25, 2013: Hamilton assaults Cho*.

Hamilton returned to the store on November 25, 2013. Cho told him not to come in, but Hamilton stood "there and then he refused to go." Hamilton did not say anything. When Cho started to walk outside to call the police, Hamilton hit Cho several times, rendering Cho unconscious.[1]

---

[1] Video surveillance also captured this incident.

Hamilton never spoke of his gang membership. Cho did not know whether Hamilton was a gang member.

C. *Gang evidence.*

Police Officer Clifton Rose, while assigned to a gang enforcement detail, was primarily responsible for keeping up with the activities of the Rolling 30s Harlem Crips gang. For four years Rose patrolled an area that encompassed where the crimes at issue took place. He had daily contact with Rolling 30s members. In the past year, he investigated probably 50 different crimes involving Rolling 30s and over 100 crimes in the past four years. The gang's primary activities are burglaries, robberies, narcotics sales, weapons violations, and possession of firearms. But "[b]urglaries are the flavor of the year" or "of the decade."

Hand signs associated with Rolling 30s includes holding both thumbs and "[w]hen you put it together it kind of forms the top of a H."[2] "Any variation of the thumbs up is their main gang sign." Hamilton was photographed in front of Marvin's Liquor making this "thumbs up" hand gesture, which shows, " 'This is my location. This is my spot. This is territory I'm claiming for this gang.' " Marvin's Liquor is in a "border area with a rival gang" of the Rolling 30s. Borders or boundaries between gangs must be "protected."

Hamilton, whose moniker was Infant Harlem Rob, admitted to Rose that he was a member of the Rolling 30s gang.[3] On December 5, 2013, Rose noticed that Hamilton had a new tattoo, an old English D on his forearm. It signified membership in the Rolling 30s, "specifically the Denker Park area." Such a tattoo must be "earned." To move up in a gang, a member has to "put in work," i.e., commit crimes.

Rose believes that Hamilton is a Rolling 30s Crip, based on Hamilton's admission, that Hamilton has been seen throwing gang signs, his association with other gang

---

[2] Photographs of defendant and other individuals throwing this gang sign were introduced.

[3] This admission occurred sometime in November 2013, before the 25th.

members, and his gang tattoo.  Based on hypotheticals modeled on the facts of this case, Rose also believed that the crimes were committed for the benefit of the Rolling 30s gang.  That Hamilton threw a gang sign during the burglary "broadcast[s] to anyone that may be in the store or the store owner themselves that, 'I'm a member of this gang and I'm doing this and I'm committing this crime.'  [¶]  So it's showing to me that that person is showing allegiance to the gang and . . . trying to benefit the gang in that way by putting himself out there . . . ."

D.      *The defense gang expert.*

Kimi Lent, a gang intervention specialist, reviewed the video footage.  The hand signs Hamilton made were not gang signs.

## II.      Procedural background.

On October 14, 2014, a jury found Hamilton guilty of count 2, assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4))[4] and found true a personal infliction of great bodily injury allegation (§ 12022.7, subd. (a)).[5]  The jury also found Hamilton guilty of count 3, second degree commercial burglary (§ 459) and found true a gang allegation (§ 186.22, subd. (b)(1(C)).

On November 7, 2014, the trial court sentenced Hamilton.  On count 2, the court imposed the high term of four years plus a consecutive three-year-term (§ 12022.7, subd. (a)).  As to count 3, based on the passage of Proposition 47, the court redesignated Hamilton's burglary conviction as a conviction under new section 459.5, a misdemeanor. Because count 3 was now a misdemeanor, the court similarly redesignated the true finding on the gang enhancement as a true finding under section 186.22, subdivision (d), which concerns misdemeanors.  The court therefore sentenced Hamilton on count 3 to eight months (one-third the midterm).  His total sentence was seven years, eight months.

---

[4]      All undesignated statutory references are to the Penal Code.

[5]      As to count 2, the jury was "undecided" on the gang allegation (§ 186.22, subd. (b)(1)(C)).

## DISCUSSION

**I. The evidence was sufficient to support Hamilton's burglary conviction.**

Hamilton contends that his burglary conviction must be reversed because there was insufficient evidence he harbored the requisite intent at the time he entered the store. We disagree.

In assessing a claim of insufficiency of the evidence, "we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Snow* (2003) 30 Cal.4th 43, 66.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Medina* (2009) 46 Cal.4th 913, 919.) The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence. (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

Burglary is entry into a specified structure or area with the "intent to commit grand or petit larceny or any felony." (§ 459; see also *People v. Tafoya* (2007) 42 Cal.4th 147, 170.) "Because intent is rarely susceptible of direct proof, it may be inferred from all the facts and circumstances disclosed by the evidence. [Citations.] . . . 'Where the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal.' [Citation.]" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245.)

The facts and circumstances reasonably indicate that Hamilton intended to commit a theft or felony when he entered the store on November 21, 2013. One week before November 21, Hamilton had been told not to come back to the store. He ignored that directive and returned on November 20, 2013 to steal a soda. Hamilton again violated Cho's admonition not to return to the store when, on November 21, Hamilton came back and stole the bag of Doritos. Having been banned from the store, Hamilton had no legitimate reason to be there on November 21. That his intent in going to the store on

November 21 was an illegitimate one—namely, to commit a theft or felony—was further demonstrated by his prior theft of the soda on November 20. (See *People v. Harris* (2013) 57 Cal.4th 804, 841-842 [evidence of prior burglary admissible to show "larcenous intent" where "[i]n both cases, defendant entered a woman's dwelling within walking distance of his own apartment at night, and stole several items"; the earlier burglary "supports the reasonable inference that [defendant] also intended to steal from [second victim's] apartment"]; *People v. Corral* (1943) 60 Cal.App.2d 66, 71 [that defendant stole a suit from a store and returned to steal a second one showed an intent to commit theft].) The evidence was sufficient to show that Hamilton harbored the requisite intent for burglary.

## II. There was sufficient evidence to support the true finding on the gang allegation.

Next, Hamilton contends there was insufficient evidence to support the true finding on the gang allegation; hence, his conviction violated his federal due process rights (U.S. Const., 5th & 14th Amends.).[6] Again, we disagree.

Hamilton's specific challenge is there was insufficient evidence he committed the burglary for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b)(1); *People v. Albillar, supra,* 51 Cal.4th at p. 59.) Officer Rose, however, testified that Hamilton belonged to the Rolling 30s, a gang that commits burglaries as one of its primary activities. Marvin's Liquor was in a "border area" with Rolling 30s's rival gang. Although Hamilton did not verbally reference his gang during the burglary and neither Cho nor Martinez knew that Hamilton was a gang member, Hamilton made a gang sign with his hands: he held both thumbs up. According to the gang expert, "Any variation of the thumbs up is [Rolling 30s's] main gang sign." That Hamilton threw the gang sign during the burglary "broadcast[s] to anyone that may be in the store or the store owner themselves that, 'I'm a member of this gang and I'm doing

---

**6** We review a challenge to the sufficiency of the evidence to support a gang enhancement under the same standard stated above. (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

6

this and I'm committing this crime.' [¶] So it's showing to me that that person is showing allegiance to the gang and . . . trying to benefit the gang in that way by putting himself out there . . . ." Moreover, soon after the burglary, Rose saw Hamilton with a new tattoo on his forearm, an old English D, signifying membership in the Rolling 30s, "specifically the Denker Park area."[7] Based on Rose's testimony that such a tattoo must be "earned," the jury could reasonably infer that Hamilton "earned" his tattoo by committing the crimes.

This case is therefore not like *People v. Ramon* (2009) 175 Cal.App.4th 843, and *People v. Ochoa* (2009) 179 Cal.App.4th 650, where the courts found the evidence insufficient to support the gang allegations. In *Ramon*, the only evidence supporting the enhancement was the gang expert's testimony that the defendant and his codefendant were members of the same gang and they were stopped driving a stolen vehicle (a crime commonly committed by their gang) in territory their gang claimed. (*Ramon,* at p. 849.) In *Ochoa*, the defendant, while stealing a car, made no gang signs or signals or otherwise engaged in gang behavior during the commission of the crime. (*Ochoa*, at p. 662.) In contrast, Hamilton's intent to benefit his gang was evidenced by his hand gesture.

We therefore conclude that there was sufficient evidence to support the true finding on the gang allegation and that defendant's due process rights were not violated.

---

[7] Hamilton, whose middle name was Desean, told Rose that the "D" was related to his name.

7

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                    ALDRICH, J.



We concur:



        EDMON, P. J.



        JONES, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.