[Crim. No. 1282. Third Appellate District.—October 13, 1933.]

THE PEOPLE, Respondent, v. JOHN AZBILL, Appellant.

J. Oscar Goldstein for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—The defendant was charged, tried and convicted of the crime of burglary and now appeals from that judgment. Counsel for appellant did not represent the defendant at the trial of the case.

From the evidence on the part of the prosecution it appeared that about 2 o'clock A. M. of April 25, 1933, a police officer of the city of Chico saw an automobile parked near an alleyway in one of the residential sections of that city, and recalling that earlier in the evening he had seen the defendant riding about the city with that particular car, concealed himself near by. Shortly thereafter defendant approached the car, carrying a can of gasoline and some tubing. The

officer flashed his light in defendant's face, saying, "Hello, Johnnie"; to which the defendant replied, "Hello, Roy, you sure got me this time," and offered the officer some money to release him. The officer refused; whereupon defendant struck the officer over the head with a flashlight and started to run. As he ran he threw away various articles, consisting of an overcoat, two twenty-dollar bills and one ten-dollar bill, a remittance slip payable to A. R. Schluer, several handkerchiefs and other small articles.

He was captured and taken to the police station. There he was searched, and among the articles found in his possession was a hunting license made out to A. R. Schluer and a small pocket-knife.

An officer was sent to the home of Mr. Schluer and certain articles were found to be missing. Upon the trial, Schluer identified the remittance slip and hunting license, which, together with a considerable amount of currency, were missing on the morning following the arrest of the defendant, and which had been in the possession of the complaining witness in his home the night of the arrest of the accused. Likewise, a son of the complaining witness identified certain handkerchiefs dropped by the defendant in his flight as belonging to the witness, which were in a dresser drawer in the Schluer home on the night of the arrest but were missing the following morning.

No one saw the defendant enter or leave the premises, but a board was removed from the basement window, from which it was possible to enter the upper portion of the house. The morning following the arrest of the defendant, the chief of police attempted to interrogate him. Defendant claimed the handkerchiefs and knife belonged to him, but when confronted with the hunting license and remittance slip, refused to answer further questions, and stated he preferred to rest on his rights and consult counsel before answering. When asked why he struck the officer, he replied, "Well, if I got caught pulling the job I would get a pretty heavy rap." In his own defense, the defendant denied the burglary, denied that the articles were found in his possession and claimed that he entered the alleyway to get gasoline which he had cached there earlier in the evening. He also called a witness, who testified that he had on that day paid to the

defendant $50, in three bills, two twenty-dollar bills and one ten-dollar bill.

Defendant also explained his attack upon the officer and his flight by saying he was intoxicated and afraid that the officer would beat him up.

The foregoing is a summary of the testimony taken at the trial.

Defendant urges two grounds for reversal. ▬ First, he contends the evidence is insufficient to justify the verdict of burglary in the first degree. Section 460 of the Penal Code, defining first degree burglary, provides in part that "every burglary of an inhabited dwelling house or building committed in the night time . . . is of the first degree".

We feel there is ample testimony to show the property was taken in the night-time.

The defendant was apprehended about 2 A. M., a short distance from the house of the complaining witness, Mr. Schluer. Schluer testified he slept at home on the night in question and missed the articles about 10 A. M. on the following morning. "Q. Did you have that money when you went to bed that night? A. Yes, I did. Q. Mr. Schluer, where did you keep that money—in your wallet, you say? A. Yes, sir, in my hip pocket," of his trousers, which, upon retiring, were left lying on a cedar chest in his bedroom. The remittance slip, hunting license and pocket-knife were also in the pockets of the trousers on the night in question. When asked at what time he went to bed that night, he replied he could not recall, but he positively testified he had the money when he went to bed *that night,* and from the previous question it is apparent the witness was referring to the night preceding April 25th.

We believe the evidence justified the finding of the jury that Mr. Schluer's house was entered in the night-time and that the personal property referred to was then taken therefrom.

▬ The second point urged for reversal is that the following instruction given by the court at the request of the prosecution on possession of stolen property is incorrect and constitutes reversible error: "The mere possession of stolen property, unexplained by the defendant, however soon after the taking, is not sufficient to justify a conviction; it is a circumstance which, taken in connection with other testi-

mony, is to determine the question of guilt. Yet if you believe from the evidence that the defendant was found in the possession of the property described in the evidence, or claiming to be the owner thereof, after the alleged burglary, this is a circumstance tending in some degree to show guilt, but not sufficient, standing alone and unsupported by other evidence, to warrant you in finding him guilty. There must be, in addition to proof of possession of property stolen from the premises described in evidence, proof of corroborating circumstances tending of themselves to establish guilt. These corroborating circumstances may consist of acts, or conduct or declarations of the defendant, or other circumstances tending to show the guilt of the accused.

"If the jury believe from the evidence the property mentioned in evidence was stolen from the premises described in evidence, and was seen in the possession of the defendant shortly after being stolen, the failure of the defendant to account for such possession (if there was such failure) or to show that such possession was honestly obtained, is a circumstance tending to show guilt, and the accused is bound to explain the possession in order to remove the effect of the possession as a circumstance to be considered in connection with other suspicious facts, if the evidence discloses any such possession.''

Appellant attempts to show it is implied therein that regardless of how or when the stolen property was received into the possession of the defendant, nevertheless, his failure to account therefor is a circumstance tending to show guilt, and that he was bound to explain such possession in order to remove the effect of that being a circumstance of guilt, and that the mere possession was of itself sufficient to convict the defendant of burglary, if he failed to explain his possession thereof to the satisfaction of the jury.

We cannot agree with counsel in that construction. The jury were told that mere possession unexplained was not sufficient to justify a conviction but there must be proof of corroborating circumstances of acts and conduct, declarations or other circumstances, tending of themselves to show the guilt of the accused.

The jury were elsewhere told it was for them to determine from the facts shown whether defendant was found in the possession of the property referred to, whether or not they

believed it to be stolen property from the premises in question, and whether or not the accused had failed to explain his possession thereof. They were also elsewhere told in the instructions that they were the sole judges as to the facts adduced, and were instructed as to the definition of burglary, presumption of innocence, etc.

Defendant relies upon the case of *People* v. *Boxer*, 137 Cal. 562 [70 Pac. (2d) 671], to show error in the instruction but in that case the instruction read: "If the jury believe . . . that any of the property . . . was stolen . . . and received into the possession of these defendants . . . " The court said:

"As already stated the defendants were upon trial charged with burglary, and that being the case, the mere fact, if it be a fact, that subsequent to the burglary they received the fruits of the crime into their possession, it cannot be said to be a circumstance tending to show their guilt of the crime of burglary. . . .

"This instruction assumes that the defendants may have received the stolen property into their possession after the burglary was committed by other parties. . . . Indeed the instruction assumes the commission of the burglary by another prior to the possession of the property by these defendants."

We find nothing in *People* v. *Haack*, 86 Cal. App. 390 [260 Pac. 913, 916], that aids the accused here. There an instruction upon the question of possession of stolen property assumed the possession in the accused, and this court then said: "To make it a complete and accurate statement of the law it should have been predicated upon the jury believing from the evidence the fact of the recent possession of the stolen property by the defendant, and then, that such possession, unless satisfactorily explained, was a circumstance tending to show the guilt of the defendant, and should be taken with other evidence in the case in determining the guilt or innocence of the defendant."

That the instruction under consideration stands as a proper statement of the law is shown by the following cases: *People* v. *Gill*, 45 Cal. 285, *People* v. *Velarde*, 59 Cal. 457, *People* v. *King*, 8 Cal. App. 329 [96 Pac. 916], and *People* v. *Abbott*, 101 Cal. 647 [36 Pac. 129].

■ We believe the jury were amply justified in finding the defendant guilty of burglary, and that it was committed in an inhabited dwelling-house in the night-time.

Judgment is affirmed.

Thompson, J., and Plummer, J., concurred.