[Crim. No. 3972.   Second Dist., Div. Three.   May 2, 1946.]

THE PEOPLE, Respondent, v. ALPHONSO TAYLOR, Appellant.

Crispus A. Wright for Appellant.

Robert W. Kenny, Attorney General, and L. G. Campbell, Deputy Attorney General, for Respondent.

WOOD, J.—Defendants Taylor and Bryant were charged in an information with the crime of grand theft of prop-

erty of the value of $650. They were also charged in another information with the crime of grand theft of other property of the value of $1,500. Trial by jury was waived, and the cases were consolidated and tried together. The court found defendants guilty as charged in each information, and Taylor appeals from the judgments.

Appellant contends that the "decision" is contrary to the law and the evidence. He asserts that possession of the stolen property by appellant is all that was shown, and that appellant met the burden of explaining that possession satisfactorily.

In the evening of April 9, 1945, one Seidman, a representative of a New York surgical instruments company, who was a guest at a hotel in Los Angeles, parked his automobile in the hotel parking lot, and locked the doors. At that time articles, which Seidman testified were of the value of $650, were in the automobile. Those articles included a brief case containing blueprints, a box of surgical instruments, a box of tools and a tobacco pouch with Seidman's name on it. When he returned the next morning the doors of his automobile were unlocked and the articles which were in it the night before were missing. In the evening of April 6, 1945, Merie Bosh, a resident of Salt Lake City, parked her automobile on a street in Los Angeles, and locked the doors. At that time her baggage and the baggage of her lady friend, which she testified were of the value of approximately $1,500, were in the automobile. The baggage included a great quantity of women's clothing, jewelry, and personal effects. The next day when she returned, the doors of her automobile were unlocked and her baggage and her lady friend's baggage were missing. On April 18, 1945, appellant was arrested as he and his girl friend alighted from an automobile across the street from 1637 South Essex Street, at which address they lived together in Room No. 7. Most of the articles which were missing from the Seidman and Bosh automobiles were found in that room.

A police officer testified that he was one of the two arresting officers; that immediately after appellant was placed under arrest, the officers took him and the girl to Room 7 at 1637 South Essex Street and told appellant to open the door to the room; that appellant said "I don't know what you are talking about. This isn't my room"; that the witness then went to the landlady's apartment and had a conversation with her, after which he returned to Room 7 and

again told appellant to open the door; that either appellant or the girl then "produced" the key and unlocked the door; that the two officers, appellant and the girl entered the room; that there were tires, radios, flashlights, cameras, two guns— a .38 revolver and a .22 rifle, fishing poles, a box of doctor's instruments, an alligator-leather tobacco pouch with Seidman's name and address on it, blankets, clothes of different sizes, fur coats, several small "satchels or brief cases," trunks, suitcases, a soldier's uniform, jewelry and class pins in the room; that appellant told him he got the surgical instruments from his grandmother; that appellant said, in answer to questions as to where he acquired the other articles, that he had purchased them, or that he had won them while gambling, or that they were "just left there" by persons whose names and addresses he did not know.

Another police officer testified that he was assigned to investigate the case; that appellant told him that he did not have any women's clothes in his room; that the witness and three other police officers went to appellant's room and found a great quantity of women's clothing and other articles in the room, and it was impossible for the four officers to get into the room and some of them had to stand in the hall.

Appellant testified that two or three nights of each week he had dice games in his room; that certain articles (which were exhibits at the trial and identified by Seidman as articles missing from his automobile) including a box of surgical instruments, tools, and a leather "grip" and its contents came into his possession about a week before appellant was arrested when a man, whom appellant had never seen before and whose name he did not know, participated in a dice game in appellant's room and lost $65; that appellant lent the man $10 and took the box and grip as security; that he looked in the box before he made the loan and saw that it contained pliers, a screwdriver and some "shiny stuff" about six inches long, but he did not look in the grip at that time; that the man did not return to redeem the box and grip; that the man also had a tobacco pouch (the one with Seidman's name on it) which he offered to sell for fifty cents, and that he (appellant) gave him one dollar for it and the tobacco in it; that there were five or six men in his room when he acquired said property, but he did not know any of their names; that three or four of them were shipyard workers, and some of them lived in the

"apartment" where he lived; that he had seen "practically two" of them about two or three times before—they came to his room to gamble, but they never told appellant their names. He further testified that he and his girl friend had been living together about two years; that one day she asked him if she could buy some clothes from a boy whose wife had left him; that appellant told her to buy any of the clothes that would fit her; that she purchased wearing apparel and other articles (identified by Mrs. Bosh as those missing from her automobile) from this boy whose first name was Louie and whose last name he did not know but who was then living at the Pacific Hotel; that she paid for the articles with her own money; that they cost $45 or $50, and included blouses, a bracelet, a dress, and blankets; that his girl friend had "a great deal" of clothes before she made this purchase; that at the time of his arrest he didn't have anything in his room except his clothes and his girl friend's clothes. In answer to a further question, he stated that he also had at the time of his arrest one automobile tire, one fishing pole, one gun and one rifle in his room. He also testified that he did not tell the police officer he got the surgical instruments from his grandmother—that the officer asked him about an electric "smoothing iron" in his room, and he told him his grandmother gave that to him.

■ Possession of stolen goods is not in itself sufficient to justify a conviction of grand theft. ■ Possession of goods recently stolen may be considered by the court, however, in connection with other incriminating evidence and, if not satisfactorily explained, it is a circumstance tending to show guilt. (*People* v. *King,* 8 Cal.App. 329, 332 [96 P. 916]; *People* v. *Azbill,* 134 Cal.App. 616, 621 [25 P.2d 1010].) ■ If an explanation of such possession is attempted by the accused it is for the trier of facts to judge of its truth and plausibility. (*People* v. *White,* 35 Cal.App.2d 61, 68 [94 P.2d 617]; *People* v. *McClain,* 115 Cal.App. 505, 508 [1 P.2d 1085].) It was stated in *People* v. *Taylor,* 4 Cal.App.2d 214, at page 217 [40 P.2d 870]: ". . . False statements showing consciousness of guilt or as to how the property came into defendant's possession, . . . inability to find the person from whom defendant claimed to have received the property, have each in turn been held to be sufficient to connect the accused with the crime when proven in connection with possession of the stolen property." ■ As shown above, appellant falsely stated that he did not live in

room 7, that there was nothing in his room except clothes, and that there were no women's clothes in his room. He also said, according to the officer, that he obtained the surgical instruments from his grandmother. At another time he stated that he obtained the surgical instruments and certain other articles from a man he had never seen before and whose name he did not know; that said instruments and articles were obtained in the presence of five men whose names he did not know; and that his girl friend (who did not testify) purchased the large quantity of merchandise (identified as the property of Mrs. Bosh) from a boy named "Louie" whose last name he did not know.

The evidence in the present case was legally sufficient to justify the conclusion of the trial court.

The judgments are affirmed.

Desmond, P. J., and Shinn, J., concurred.