[Crim. No. 4193. Second Dist., Div. Three. Apr. 28, 1948.]

THE PEOPLE, Respondent, v. LEROY L. JOHNSON et al., Defendants; HENRY EWING, Appellant.

Walter L. Gordon, Jr., for Appellant.

Fred N. Howser, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

SHINN, Acting P. J.—In a jury trial Leroy L. Johnson and Henry Ewing were convicted of three felonies each, Johnson of receiving stolen property and two offenses of forgery of a fictitious name, and Ewing of one offense of burglary and two offenses of forgery of a fictitious name. It was found by the verdicts that Johnson had been convicted of one previous felony, and Ewing of two, as charged in the information. Ewing alone appeals, claiming insufficiency of the evidence and error in the giving of an instruction.

A clothing manufacturing concern known as Capetillo Sportswear was burglarized on the night of April 8, 1947. The proprietors testified that they lost 600 sport shirts, a checkbook, a check writing machine, some nightgowns, negligees and remnants, all of which they valued at approximately $6,000. They described the collars and material of the shirts, also a light pink thread and a white thread that was used in the manufacture of ladies' garments. They described also a sewing machine used for stitching which was not in good re-

pair and made an extremely loose stitch which was not difficult to identify. The checks in the checkbook were numbered serially and were printed with the name of Capetillo Sportswear. Pearl buttons were used on the shirts and also certain custom made shoulder pads, which came in a cardboard box on which appeared the name of the manufacturer. Only a few of the garments were recovered. Some of the stolen checks were filled out in typewriting and were cashed. One typewriter was used on some of the checks, another one on the remainder. Defendant Johnson admitted cashing two of the checks but denied the burglary. Ewing denied both the burglary and the writing or cashing of the checks, but made admissions with reference to both the burglary and the forgeries which tended to connect him with the commission of both offenses.

█ There was, in our opinion, sufficient evidence to support the convictions of appellant. It will not be necessary to set it out at great length. Gabriela Capetillo, one of the proprietors, testified that about a week or week and a half prior to the burglary a colored man came into her place inquiring about work and that she talked with him for about three minutes and later saw him outside of a near-by beer hall; that while in the shop the man kept looking around the place, "sizing it up." She was almost sure that appellant was this man. She identified threads which were found in appellant's car as those which were used and which had been through her overlapping machine and which contained a loose stitch, and she also identified some of the shirts and some shoulder pads that had been recovered by the police, as hereinafter noted. She testified that certain checks that were recovered by the police from the defendants had been taken from her checkbook, and that the name signed thereto, Charles Rosser, was not that of anyone in her employ. Also, that the payees of the checks, Ben E. Brown and Vernon J. Carter, were not employees.

Appellant was purchasing a 1941 Cadillac sedanette, with license No. 7X9887. He was driving the car at the time of his arrest, shortly after the burglary. Defendant Johnson and a third man, Thompson, were with him. A number of checks taken from the stolen checkbook were found under the front seat of the car and in the rear a typewriter which, according to the expert testimony, had been used in writing portions of seven of the checks which were received in evidence. In the trunk of the car were found particles of thread of

various colors and these were identified by expert testimony with the threads used in making up the stolen articles, and in the sewing machine which, as stated, made loose stitches. Others of the checks were filled out in part on a typewriter which appellant had borrowed from his landlady, Lydia Hayne. She and appellant both testified that about 1 o'clock in the morning appellant had awakened her and borrowed her typewriter which he took up to his room and kept for only 10 or 15 minutes, when Miss Hayne required him to return it. Appellant's explanation of this incident was that he borrowed the typewriter at the request of Johnson, that he left his room shortly after receiving the typewriter and did not return until Miss Hayne had taken the machine away. Police officers testified that they endeavored to get information from appellant as to what had become of the stolen goods and that appellant told them that there were not 600 shirts, but only 45 or 48. Defendant Johnson took the officers to a sewer opening in the southwest part of the city, and they recovered therefrom several of the stolen shirts, coat hangers and other material. Appellant's brother-in-law, Thompson, testified that shortly before the arrest, while riding with appellant and Johnson, he saw checks on the seat of appellant's car and also an identification card, and that during the course of the ride appellant asked him whether he had ever cashed any checks, and he replied that he had not. Appellant's automobile was impounded by the police and appellant offered, if the car were released to him, to try to locate the shirts and return them. When asked what he had done with the check protector he told the officers he had thrown it down a storm drain. His explanation of these statements was that he was merely repeating information he had received from Johnson. He and Johnson admittedly were close friends and appellant testified that on occasions he allowed Johnson to use his car. This is substantially the evidence tending more or less directly to connect appellant with the burglary. However, his later activities in connection with the cashing of the checks furnished an unsatisfactory explanation of the fact that the stolen checks were found in his car. He offered no denial of the testimony that threads from the stolen shirts were found in the car, but only expressed surprise to the officers that they had thought to look for such things.

Johnson admittedly cashed one check with a check cashing agency and another at a store where he purchased some

trousers, shirts and gloves, receiving the balance of the check in cash. Another man cashed a check with the check cashing agency payable to Vernon J. Carter. The cashier, testifying as a witness, identified appellant as the man who cashed this check. The proprietor of the store, where Johnson purchased the articles, was a witness and identified him as the purchaser. Johnson was wearing some of the articles after his arrest. The witness testified that after Johnson left the store he saw appellant across the street sitting in a Cadillac car. He had his brother call up the Capetillo Sportswear about the checks, notified the police, drove to the address that Johnson had given, which he found to be a fictitious one, and drove by the Cadillac car several times with the thought in mind of asking appellant if he had seen where Johnson had gone when he left the store. He did not make this inquiry but observed the Cadillac parked there for about 15 minutes with appellant sitting at the wheel. In the meantime one Davis, who was also charged with forgery but had not been brought to trial, was purchasing some merchandise in a near-by food market where he cashed a check for $43.50, payable to the order of Vernon J. Carter and signed, Charles Rosser. One Kaplan, proprietor of the market, becoming suspicious, followed Davis and saw him join appellant in appellant's car. He wrote down the license number, admittedly that of appellant's car, and then called the police. Police officers questioned appellant who denied the burglary or the cashing of the checks. He was accused of having stooges cash checks for him, and said to the officers, ''you can't blame me for that.'' There was evidence that the names of the payees of the checks that were cashed were fictitious. It consisted of expert testimony that the names, Ben E. Brown and Vernon J. Carter, were in the same handwriting as the name Charles Rosser.

It is unnecessary to recapitulate the evidence which pointed to defendant's guilt of the offenses of which he was convicted. The circumstantial evidence which we have stated, and the defendant's admissions, furnish sufficient evidence to support his conviction of the burglary. There was convincing evidence that he aided and abetted others in cashing the checks, if he did not in fact cash one of them himself.

Appellant criticizes the following instruction, given at the request of the People: ''Where goods have been feloniously taken by means of a burglary and they are immediately or soon thereafter found in the possession of a person who gives a false account or refuses to give any account

of the manner in which he came in their possession, proof of such possession and guilty conduct is ~~presumptive~~ evidence, not only that he stole the goods, but that he made use of means by which access to them was obtained." Such an instruction was approved in *People* v. *Corral,* 60 Cal.App.2d 66 [140 P.2d 172]. This language originated in *People* v. *Lang,* 142 Cal. 482 [76 P. 232], in discussing the sufficiency of the evidence to support a conviction of burglary. We do not believe the principle is well stated for use in an instruction. For the court to classify actions of the accused as "guilty conduct" in discussing the sufficiency of the evidence, as was done in the cases cited in *People* v. *Corral,* is quite apart from instructing the jury that such actions constitute "guilty conduct." Moreover, to instruct that certain acts of the defendant furnish evidence of his guilt is little short of instructing that they constitute sufficient evidence to warrant a verdict of guilty. The criticized instruction should not be given. A correct statement of the law will be found in *People* v. *Russell,* 120 Cal.App. 622, 625 [8 P.2d 209]. ■ In a prosecution for burglary, or receiving stolen property, where the accused is shown to have been in possession of the property, instructions should be framed upon the principle that "[t]he failure of the accused to account for such possession upon a theory inconsistent with his guilt of the offense charged or to show that the possession was honestly obtained is itself a circumstance tending to show guilt." (See also *People* v. *Taylor,* 4 Cal.App.2d 214, 217 [40 P.2d 870] ; *People* v. *Russell,* 34 Cal.App.2d 665, 669 [94 P.2d 400].) To say that it is "evidence" of guilt, rather than a circumstance tending to prove guilt, is to magnify its weight, which should not be done, lest there be raised in the jurors' minds a doubt whether the acts of the accused should be considered merely as an incriminating circumstance, or as sufficient evidence of guilt. ■ But although we disapprove of the giving of the instruction, we do not regard the error as one which requires a reversal of the judgments. From a consideration of the entire evidence, as applied to the burglary charge, the error in the instruction does not appear to have resulted in a miscarriage of justice.

The judgments are affirmed.

Wood, J., and Vallée, J. pro tem., concurred.