[Crim. No. 4934. In Bank. Nov. 5, 1948.]

THE PEOPLE, Respondent, v. MITCHELL MACHABIE et al., Defendants; WILLIAM O. REED, Appellant.

Crispus A. Wright for Appellant.

Fred N. Howser, Attorney General, John F. Hassler, Deputy Attorney General, Wm. E. Simpson, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

THE COURT.—A hearing was granted to William O. Reed by this court after the order denying a new trial of the action in which he was convicted was affirmed by the District

Court of Appeal. With certain modifications, the conclusions stated by Mr. Justice Wood as the reasons for the decision are now adopted as the opinion of this court. They are as follows:

"Defendant Reed and one Machabie were convicted of burglary of the second degree and grand theft. Trial by jury was waived. Proceedings were suspended as to Reed and he was placed on probation. Reed appeals from an order denying his motion for a new trial.

"He contends that the evidence was not sufficient to justify the decision. The evidence shows that between the hours of 6:15 p. m. on March 5, 1947, and 8:30 a. m. on March 6, 1947, burglary and grand theft were committed at the warehouse of S. L. Abbott Company in Los Angeles. The skylight of the building was broken and the lock on a rear-entrance door at the delivery 'pit' had been pried off, and 98 sacks of pure shellac of an approximate value of $10,000 —each sack weighing 164 pounds—had been taken from the building. One week later 88 of those sacks of shellac were found in a garage at 10501 Zamorra Street, Watts, California. This kind of shellac is used principally in the production of the phonograph record material that is known as 'the biscuits' in the phonograph record manufacturing business.

"Mr. Jackson, a witness called by the plaintiff, testified that he resided at 1051 Zamorra Street in Watts, and that he operated a service station at 5251 Central Avenue, Los Angeles; that on March 5, 1947, about 1 p. m., appellant, whom he had known about three years, came to the service station and told him that he wanted to rent a garage 'to store some stuff in'; that it was 'arranged' to rent the garage, which did not have a roof on it, until the roof was put on and the owner was ready to use it; that between 11 p. m. on March 5th, and 1 a. m. on March 6th, appellant came to the front door of his (witness') house and told him that some 'fellows' were bringing 'some stuff' to put in the garage and 'don't be alarmed' if he should 'hear some noise out there, don't think someone was breaking in the house'; that after appellant left, he (witness) heard the motor of a truck in the driveway; that on March 9th, appellant went to the service station and paid the $8.00 rent, and at that time, in response to Jackson's request that the garage be vacated, appellant said he would have the stuff moved out the next day, March 10th; that he saw appellant, the next time, on March 12th at appellant's home when he (witness) went there with police officers,

"Police officer Goldstone testified that he, another officer, and Mr. Jackson, went to the home of appellant on March 12th, and knocked on the door; that someone, in response thereto, said, 'Who is there?'; that Jackson then said, 'Jackson, the garage man'; that the door was then opened by appellant; that appellant, in response to an inquiry as to what his occupation was, said that he was in the phonograph record business at 709 East 29th Street; that they took appellant to that address and observed that phonograph records were being made there; and that Jackson said, in the presence of appellant, that he had rented the garage to appellant.

"Appellant testified that his codefendant and friend, Machabie, had told him that some fellows wanted to hire him (Machabie) to do some hauling for them; that, as a favor to Machabie and to aid him in getting the hauling job, he told Jackson that some fellows wanted to rent a garage for storage for a short time; that Jackson replied that he had a partially finished garage and if appellant would 'stand good for the rent' he would rent it for a short time for $8.00; that appellant told Machabie where the garage was located; that appellant went to Jackson's house about 10:30 p. m. and 'told him the fellows were coming to bring something out there,' and that perhaps he also told him 'not to be alarmed, that they were coming to store something in his garage'; that Machabie gave appellant the $8.00 rent; that when Jackson told him that he wanted him to get the stuff out of the garage, he replied that he 'would try to see the fellows and tell them his desires'; that appellant was in the business of manufacturing phonograph records; that he did not use shellac in manufacturing the records; that he used 'a biscuit' from which he pressed the records; that he did not know anything about the burglary, and was not implicated in any burglary; that when the officers asked him some questions he told them that he did not know what it was all about and that if they were attempting to implicate him in something he would appreciate it if they would speak with his attorney.

". . . Although the evidence as to appellant's participation in the crimes was circumstantial, it was sufficient to support the judgment. . . . Immediately after the crimes were committed the shellac was taken to the garage which appellant had rented a few hours previously for a short time only. ▉ Possession of stolen property, shortly after it is stolen, is a circumstance pointing to the guilt of the accused. (*People*

v. *Carroll*, 79 Cal.App.2d 146, 148 [179 P.2d 75].) His explanation of his conduct in renting, and in assuming the rental responsibilities of, the garage was unsatisfactory. In the afternoon preceding the night the crimes were committed, the appellant, for and on behalf of some unknown 'fellows,' rented a roofless garage as a storage place for some unidentified 'stuff' or 'something,' merely for the purpose, according to his testimony, of aiding his codefendant Machabie in getting a job of hauling something to such a place as appellant might rent. He was present at the garage premises about midnight immediately before the delivery of the stolen property to the garage, and aroused the garage owner from his sleep, and announced to him that 'some fellows' were then bringing 'some stuff' to the garage. His explanation of that conduct, to the effect that his only interest in being there under such unusual circumstances was to warn the garage owner not to be alarmed, was unsatisfactory. That explanation, in view of other testimony by him, means that he was so solicitous of the welfare of the garage owner that about midnight he left his work at his phonograph record manufacturing company on 29th Street in Los Angeles, where he was working the night shift, and traveled several miles to the garage premises in Watts. Of course, his midnight trip to the garage premises, while the 'stuff' was being delivered to the garage, had no relation to the matter of helping Machabie get the hauling job—it appearing that prior to that time Machabie or someone had obtained the job. His statement, made about three days after the property had been delivered to the garage, that he would have it removed the next day after the garage owner asked him to move it, indicates that he had an interest in the transaction other than that of helping Machabie get a hauling job. Another circumstance to be considered is that pure shellac is used principally in manufacturing phonograph record material, and that appellant was in the business of manufacturing phonograph records.''

The order denying the motion for a new trial is affirmed.