[Crim. No. 2913.   First Dist., Div. One.   Dec. 30, 1953.]

THE PEOPLE, Respondent, v. CARLISLE T. CLARK, Appellant.

George A. Sears for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener. Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant was charged with burglary, and with a prior 1938 burglary conviction. At the trial he admitted the prior burglary charge, and also admitted that in 1945 he had been convicted of, and served a term for, a felony under the Deadly Weapons Act. At the trial, although offered the services of the public defender, defendant insisted on representing himself, but the trial court directed the public defender to remain at the trial as an observer. The jury found defendant guilty of second degree burglary. He appeals from the judgment entered on the verdict. On this appeal, at his request, he is represented by court appointed counsel.

The record shows the following: At about 10 p. m. on September 8, 1952, A. D. Peck parked his automobile on Golden Gate Avenue near Leavenworth in San Francisco. The two doors of the automobile were locked. He returned to the car the next morning at 7 a. m. He found one of the wing windows broken and both doors unlocked. He also discovered that a Clarus camera, the serial number of which he knew, a gadget bag made for him in Australia containing miscellaneous camera equipment, and with his name printed on it, a Fada radio, easily identified because of the color of the case and because of two holes drilled therein, and a screwdriver, were missing. He reported the theft to the police and gave them a description of the stolen property.

On the morning of the same day, September 9, 1952, Inspectors Lang and Short of the pawn shop detail observed a camera and a gadget bag in the window of a pawn shop on Sixth Street, in San Francisco. Investigation disclosed that the camera had the serial number of the camera reported stolen by Peck, and the gadget bag had Peck's name printed on it. The proprietor stated that he had purchased the articles that morning about 9:30 from defendant for $5.00, and that defendant had given him the false name of Jack Hines and a false address, but that he knew defendant's real name and address, which he gave to the officers. There is evidence that the camera and attachments were worth over $100.

The officers went to the address given them by the pawn shop proprietor, which was that of a hotel located in the same block as the pawn shop. The defendant was not there, but the officers were admitted to defendant's room by the manager. Among some 87 articles in the room they found a

screwdriver similar to the one reported stolen, and a Fada radio. The radio was later positively identified by Peck as the one stolen from his automobile. The screwdriver was similar to the one taken from Peck's car. While the officers were still in the room defendant returned. He then readily admitted, and he testified at the trial, that he had sold the camera and gadget bag to the pawn shop proprietor, but he denied having stolen them. He told the officers that on that very morning around 9 a. m.* he was standing near the pawn shop when a friend, whom he did not then further identify, drove up in a green Oldsmobile, gave him the camera and gadget bag, and, after assuring defendant that they were not "hot," asked him to sell them for him. This he did, but gave a fictitious name because he was suspicious of the transaction. At the trial he told the same story, adding to it that this friend had suggested the fictitious name and address of Jack Hines, and further identified this friend as one Robert Romo, who was not produced, whose absence was not explained, and whose address or whereabouts were not given.

The defendant testified at the trial that one of the officers had taken $10 from him, paid a taxi driver who was waiting for defendant, and kept the change. The officer testified that he took a dollar from defendant which he paid to the taxi driver. Defendant also charged during the trial that many other articles besides the radio and screwdriver here involved had been removed from his room by the officers, and broadly implied something was wrong about this because neither he nor the hotel manager had been given a list of the removed articles.

The two officers testified that they made a list of the 87 pieces of property in defendant's room. In addition to the Fada radio and screwdriver, already mentioned, there were three cameras, another radio, seven wallets, ten other screw drivers, two files, three pairs of pliers, three electric irons, four suitcases, ten pairs of slacks, five jackets or sportcoats, two topcoats, a key ring with 75 or more miscellaneous keys on it, and other items. All of these, in defendant's presence, were removed from the room. The officers made an official list of the removed property and delivered the articles to the police property clerk.

---

*The officers also testified that while questioning the defendant at the time of his arrest he at one time changed the time from 9 a. m. to between 4 and 6 a. m.

There is also evidence that defendant, before being taken to jail, offered to ''do business'' with one of the officers, and told the other that he was going to beat the charge ''even if I have to pay you off.''

At the trial defendant testified that the Fada radio was not found in his room, implying that it had been planted there by the officers. In addition to explaining how he had come into possession of the camera and gadget bag, he offered an alibi. He produced a witness, then under arrest, James Parker by name. Parker testified that about 5 p. m. of September 8, 1952, he had picked up defendant in a borrowed automobile and, at defendant's request, driven him to Stockton; that both men spent the night in Stockton unsuccessfully looking for a girl friend of defendant, and then returned to San Francisco, arriving shortly after 9 a. m. on September 9, 1952. On cross-examination Parker admitted two prior felony convictions of burglary. Parker's testimony was corroborated by defendant. Admittedly this Stockton alibi was not told to the officers at the time of arrest or later, first making its appearance at the trial.

■■ The evidence supports the judgment. Appellant contends that the only evidence against him is the possession of the recently stolen property, and correctly contends that such fact alone will not support a conviction of burglary. But it is equally true that possession of recently stolen property plus corroborating circumstances such as acts, conduct or declarations of the accused tending to show guilt, will support such a conviction. (*People* v. *Russell,* 34 Cal.App.2d 665 [94 P.2d 400]; *People* v. *Carroll,* 79 Cal.App.2d 146 [179 P.2d 75]; *People* v. *Owens,* 79 Cal.App.2d 290 [179 P.2d 401]; *People* v. *Smith,* 98 Cal.App.2d 723 [221 P.2d 140].) Of course, what must be shown in addition to the fact of possession of recently stolen property varies with the circumstances of each case, and the weight to be given to such circumstances is generally for the jury. Here defendant about 9:30 a. m. on September 9, 1952, sold two articles that had been stolen sometime after 10 p. m. the night before. These articles, although worth over $100, were sold for $5.00. Defendant, in making the sale, gave a false name and address. When arrested his explanation that some unidentified friend, first identified at the trial but who was not then or ever further identified or produced, gave him the articles to sell, together with the alibi of the Stockton trip, first told at the trial by defendant and a twice convicted felon, are also

suspicious circumstances. The conflicting times given as to when this friend delivered the articles is another suspicious circumstance. The offer to "do business" with the officers and to buy them off were matters that could be considered by the jury as indicating a consciousness of guilt. The corroborating circumstances, together with the admitted fact of possession of recently stolen property, are amply sufficient to sustain the conviction.

██ The trial court, however, failed to instruct the jury that the unexplained possession of recently stolen property would not alone support a finding that the possessor was guilty of burglary. While defendant made no such request for such an instruction, his counsel now contends that the court should have given it *sua sponte,* and that the failure to do so was prejudicial error. Among other cases cited to support his contention is *People* v. *Smith,* 98 Cal.App.2d 723 [221 P.2d 140]. That case undoubtedly held that the failure of the trial court to give such an instruction *sua sponte* was error. Based on that case the attorney general concedes error in this respect, but contends that such error was not prejudicial.

*People* v. *Smith, supra,* supports the contention of the attorney general that the admitted error was not prejudicial. In that case a typewriter was stolen from a county building. The day after the theft, defendant sold the typewriter to the proprietor of a tavern, executing a receipt in the name of one Eggert. When arrested, defendant stated that the typewriter was owned by Eggert, but the officers were unable then or later to locate such a person. Defendant gave several conflicting stories to the police. Pencils similar to those used in the county office from which the typewriter was stolen were found in defendant's possession. There was evidence defendant had knowledge of the means of access to the room from which the typewriter was stolen. It was held that this evidence (p. 727) "amply supports the verdict." Although the court held that the instruction here involved should have been given *sua sponte,* it also held that the failure to give it was not, under the facts, prejudicial. If the error was not prejudicial in that case it could not be so in the instant case.

The next contention of counsel is that it was prejudicial error to admit into evidence the list of 87 articles found in defendant's room.

Before discussing this contention, the circumstances under which the list was admitted should be reviewed. The list

was first mentioned during the recross examination of Officer Lang by defendant. The defendant asked the inspector if he had made a list of the property removed from the room, to which the officer stated that he had, and that the list was on file in the police department, and the removed property deposited with the property clerk. Defendant then asked if a copy of the list was then given to him or to the proprietor of the hotel, to which the officer replied that it had not, because defendant was present, saw the articles removed, and the articles were brought to the jail in the company of defendant.

The list was not mentioned again until the cross-examination of Officer Short, when defendant asked him questions similar to those asked of Officer Lang, and received substantially the same answers. The court then asked defendant if he was asking for a copy of the list, and when the defendant stated that he was, the court, upon being assured by the prosecuting attorney that such a list was available, asked defendant if he wanted to look at it. Defendant replied that he would look at it later, but that what he wanted to bring out was that no copies of the list were given to defendant or to the manager of the hotel.

On the redirect examination of Inspector Short, the prosecuting attorney produced the list, showed it to defendant and asked him if he wanted it introduced into evidence. The defendant replied: "That? I don't see why, it has nothing to do with this. You can, I will submit it in evidence." Thereupon, the list was identified by Inspector Short and he was asked to read it into evidence. The following then occurred:

"MR. CLARK [the defendant] : I object to that.

"MR. HANLEY [the prosecuting attorney] : I thought that——

"THE DEFENDANT: It has no relevancy to this case.

"THE COURT: Didn't you raise the question of why they didn't make a list of the items taken from your apartment? Well——

"THE DEFENDANT: Well, I will submit it, let him read it.

"THE COURT: I think that maybe the fact that the defendant does not have counsel, I suggest you do not.

"MR. HANLEY: Well, possibly not, then, your Honor. Thank you, Mr. Short.

"THE COURT: In other words, if Mr. Dresow were representing him, he possibly would not have opened up that subject.

"MR. HANLEY: Thank you, Mr. Short.

"THE COURT: For the sake of the record, you might offer that for identification.

"MR. HANLEY: Very well, then, may it be—go in as People's No. 5 for identification?"

The list was next mentioned during the cross-examination of defendant. He first admitted, without objection, that there were eleven screwdrivers and three cameras in the room, and was then asked if the list correctly enumerated what was in the room at the time of the arrest. He replied:

"A. Yes, as far as I am concerned, I have never been able to go back to the room and check what is left. . . .

"Q. Would you read that list to the jury?

"THE COURT: Do you want to do it?

"THE WITNESS: Well, I see no reason why—you asking me?

"THE COURT: Well, let Mr. Hanley do it, then; do you want to do it?"

The list was then introduced into evidence and read into evidence by the prosecuting attorney.

The parties discussed at some length the question as to whether such list would have been admissible if proper objection had been made to it. This is an interesting question. There are authorities that hold, at least by way of dicta, that it is error, not necessarily prejudicial, to admit into evidence, over objection, articles in the possession of the defendant at the time of his arrest that are not connected with the offense charged. (See *People* v. *Le Roy,* 192 Cal. 498 [221 P. 353]; *People* v. *Vertrees,* 169 Cal. 404 [146 P. 890]; *People* v. *Glass,* 158 Cal. 650 [112 P. 281]; *People* v. *Richardson,* 74 Cal.App.2d 528 [169 P.2d 44].) On the other hand, at least where the defendant first mentions the subject, or produces any evidence that makes such articles reasonable relevant to rebut such evidence, such articles have been held to be admissible over objection. (*People* v. *Downs,* 114 Cal.App. 2d 758 [251 P.2d 369].)

In the present case it was defendant who first mentioned the list in his cross-examination of the two police officers. He was trying to show that many articles of property had been taken from his room by the officers without an accounting to him. The implication was that defendant was trying to attack the credibility of the officers by showing that they had kept some of his property. Under such circumstances, under the rule of the Downs case, it became relevant for the prosecution to show what had been removed, and that all of the property had been delivered to the police department.

Moreover, as the excerpts quoted from the record demonstrate, although when the list was first offered defendant objected on the grounds of relevancy, immediately thereafter, in express language, he consented to its introduction. At that point the court intervened, and later, when the list was offered, no objection of any kind was made, and again defendant expressly consented that it be read.

It is, of course, normally the rule that failure to object to the introduction of evidence amounts to a waiver. Here, there was not only a failure to object, but two consents to the admission of the list. Appellant's counsel argues that his client elected to represent himself at the trial, which he had a constitutional right to do, and that appellate courts should not impair that right by imposing on such a person rigid standards or technical rules. That may be a sound generalization. ▉ But by electing to appear *in propria persona* a defendant cannot secure material advantages denied to other litigants. ▉ Certainly one appearing *in propria persona* cannot consent at the trial to the introduction of evidence, after first introducing the subject matter himself, and thus invite the introduction of evidence to rebut the inference he was trying to create, and then be permitted on appeal to complain that his invitation was accepted.

The other points raised do not require discussion.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 14, 1954, and appellant's petition for a hearing by the Supreme Court was denied January 27, 1954.